UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:02-CV-620-H

CRYSTAL MEREDITH                                                                    PLAINTIFF

V.

JEFFERSON COUNTY BOARD OF EDUCATION, et al.                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff has recently moved to compel the Jefferson County Public Schools ("JCPS") to enroll a specifically named student in the fourth grade at Greathouse-Shyrock Traditional Elementary School.  The motion raised concerns about the viability of counsel requesting specific relief on behalf of a non-party.  That question and, indeed, the question of the specific relief itself is no longer an issue because JCPS acted quickly to rectify an unusual sequence of events by allowing the student in question to attend Greathouse-Shyrock.

The voluntary resolution of the specific problem, however, did not erase the Court's broader concern which Plaintiff's motion has raised.  Yesterday, JCPS confirmed that it has used different attendance zones for black and white students to determine assignments at three traditional magnet elementary schools.  The Court heretofore has been unaware of this practice.[1]  Consequently, neither this Court nor the Supreme Court considered whether such a practice

---

[1] This practice of drawing separate attendance zones for black and white students is at odds with the Court's prior factual findings and understanding.  *See McFarland v. Jefferson County Public Schools*, 330 F.Supp.2d 834, 846-48 (W.D. Ky. 2004) ("each traditional elementary and middle school has its own geographic zone," clearly implying that each traditional school had one geographic attendance zone applicable equally to all races).  The oversight or misunderstanding about the elementary school assignment process could have occurred because none of Plaintiffs were directly affected by this aspect of the student assignment plan.

meets the narrow tailoring standard.[2]  The Court discussed this and other ongoing issues with the parties.  The following amplifies the views this Court articulated yesterday with which all present seemed to consent.

I.

Neither this Court nor the Supreme Court has considered the issue of whether dividing students into separate attendance zones based on race violates the equal protection clause in these circumstances.[3]  However, such an approach appears to be the functional equivalent of a race based binary selection process, which a solid majority of the current Supreme Court has rejected in these circumstances.  Justice Roberts wrote that "classifying and assigning schoolchildren according to a binary conception of race is an extreme approach in light of our precedents and our Nation's history of using race in public schools . . . ." *Parents Involved in Cmty. Schs.*, 127 S.Ct. at 2760.  Justice Kennedy, while not so unequivocal, was nevertheless equally clear about the concept: absent a showing of necessity not made here, the government is not permitted to "classify every student on the basis of race and to assign each of them to schools based on that classification."  *Id.* at 2797 (Kennedy, J., concurring).

Three years ago, this Court reviewed the traditional school assignment process.  *See McFarland.*, 330 F.Supp.2d at 862-64.  At that time, the Court considered JCPS's use of an assignment process that put black and white applicants on separate assignment tracks and held

---

[2] When the government distributes burdens or benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny.  *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, et al.*, 127 S.Ct. 2738, 2751-52 (2007).  To satisfy this standard of review, the use of racial classifications in the assignment procedure must be "narrowly tailored" to achieve a "compelling" government interest.  *Id.* at 2752.

[3] This is a subject which the Supreme Court did not address directly because this Court had required changes in the traditional school assignment process which neither party contested on appeal.  *See McFarland*, 330 F.Supp2d.at 862-864.

that such a procedure was not narrowly tailored, because it made race "the defining feature of his or her application" and was unnecessary to achieve JCPS's goals. *Id.* at 862 (citing *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003)). In a similar manner, the use of racial attendance zones unnecessarily makes race the "defining feature" in an individual student assignment in a binary fashion. Had this Court been aware of and specifically considered the separate attendance zones for traditional schools at the time of its original decision, it likely would have found them improper, even prior to the recent Supreme Court opinion.

The Supreme Court's recent direction on remand crystalizes the analysis and the result. School boards "are free to devise race-conscious measures to address the problem in a general way and without treating each student in different fashion solely on the basis of a systematic, individual typing by race." *Parents Involved in Cmty. Schs.*, 127 S.Ct. at 2792 (Kennedy, J., concurring). As noted by both this Court and Justice Kennedy, "drawing attendance zones with general recognition of the demographics of the neighborhoods" is a permissible means for a school board to further its goal of diversity, because it "[does] not lead to different treatment based on a classification that tells each student he or she is to be defined by race. . . ." *Id.* at 2745 (Kennedy, J., concurring); *see also McFarland*, 330 F.Supp.2d at 864.

For all these reasons, the Court concludes that the use of separate attendance zones for blacks and whites is impermissible under the Supreme Court's recent direction. Independently, JCPS and its counsel appear to have neared the same conclusion. Based upon JCPS's representation that the *McFarland* decision properly describes its current student assignment plan, this Court would not anticipate any further consideration or review of JCPS's policies at this time.

II.

It is important to understand a few basic principles that follow the current remand from the United States Supreme Court. The Supreme Court defined certain conduct which violates the Equal Protection Clause in our current circumstances. It did not require the school system to reassign any student nor did it require JCPS to adopt a new assignment plan within any specific period of time. No student has an inherent right of assignment to any particular school, regardless of its proximity to their residence. Upon remand, this Court's immediate concern was that JCPS cease any unconstitutional use of race as part of its current student assignment process. For that purpose, this Court convened a hearing on August 2, 2007. At that time, all parties discussed the current situation and agreed that JCPS was in compliance with the Supreme Court's decision.[4] The hearing yesterday, as amplified in the initial section of the instant Memorandum Opinion, hopefully has resolved a final uncertainty about JCPS's obligations going forward.

One might ask why this Court does not require some sort of immediate retroactive remedy or relief such as the Supreme Court required in 1955 after *Brown* and such as the late Judge James Gordon ordered in 1973. There are several good reasons why. First, none of the Plaintiffs here have requested any specific relief on remand, other than a request for damages by the Meredith family. Furthermore, no other non-party has requested additional relief arising from the Supreme Court's remand.[5] As in the previous case contesting the student assignment

---

[4] This conclusion was based upon JCPS's representation that it was no longer using race or the racial guidelines as a factor in the assignment of specific students to a school or as a factor in the consideration of student transfer requests.

[5] Whether a particular student has any legal ground to require retroactive reassignment to a particular school is also quite problematic and, in any event, can only be determined after a request and an examination of the

plan, the foremost concern of the parties and the Court has been to assure ongoing conduct consistent with the Equal Protection Clause.

Second, neither the remand of the Supreme Court nor the Sixth Circuit required or even suggested such relief because the circumstances are so unlike those in 1955 and 1973. In those instances, unconstitutional acts over many years resulted in an unconstitutional condition. That is the segregation of races by law. In 1955 or 1973, our courts found that an entire class of citizens identified by race were discriminated against and segregated. As a consequence, the Sixth Circuit Court of Appeals required Judge Gordon to immediately "formulate a desegregation plan" to eliminate the effects of past segregation. To be sure, the Supreme Court has clarified that JCPS has improperly used race conscious assignment procedures. However, those procedures did not create an unconstitutional condition, such as the forced racial segregation of students.

Consequently, when JCPS ended the offending conduct as this Court has required, the primary and appropriate remedy is achieved. This Court does not anticipate further action in this case other than resolving Plaintiff's pending motions for attorney's fees and damages.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for specific relief is DENIED AS MOOT. JCPS has indicated its intention to follow the guidance set out herein.

---

particular circumstances. Indeed, Plaintiff's counsel stated that he would not seek further equitable relief on behalf of other persons under the current circumstances.

cc: Counsel of Record