UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:02CV-620-H

CRYSTAL MEREDITH                                    PLAINTIFF

V.

JEFFERSON COUNTY BOARD OF EDUCATION, et al.        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

After this case returned on remand from the United States Supreme Court, the Jefferson County Board of Education ("JCBE") altered its student assignment procedures to comply with the Supreme Court's ruling, thus satisfying Plaintiff's request for prospective injunctive relief. Subsequently, Plaintiff, through counsel, has moved for the award of monetary damages in an amount exceeding $125,000.

Prior to even considering the evidence, Plaintiff's damage request raises three separate potentially dispositive issues. First, whether Plaintiff has asserted any cause of action which will support a claim of damages. Second, whether JCPE is entitled to immunity from damages and, third, whether Plaintiff is legally entitled to the damages claimed. Due to the interrelationship and potential decisiveness of these issues the Court will address each because they are important to an overall perspective of the case.

In the end, Plaintiff has not requested damages that are legally recognized, nor has she presented actual evidence to justify those damages. Indeed, neither appeared to present evidence. Therefore, the Court must deny her request.

I.

The original Plaintiffs here brought suit against JCBE and its superintendent at the time, Stephen W. Daeshner[1].  Plaintiffs' primary allegation was that the school's student assignment policies and procedures violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which courts have applied against actions of state government and their related agencies.  Plaintiffs also asserted claims under the Kentucky Civil Rights Act ("KCRA"), found in KRS Chapter 344.

This Court granted some relief under Plaintiffs' equal protection claim and denied the remainder.  After the Sixth Circuit affirmed, the Supreme Court granted certiorari and upheld Plaintiffs' position as to their request for relief under the Fourteenth Amendment.  Since the inception of this case, Plaintiffs have neither actively sought nor specifically requested any other form of relief, including relief under Ky. Rev. Stat. Ann. § 344.  As this Court has previously noted, the arguments presented "addressed only the constitutionality of the racial guidelines under the Equal Protection Clause."  *McFarland v. Jefferson County Public Schools*, 300 F.Supp.2d 834, 836 n.1 (W.D. Ky. 2004).

After remand, JCBE adjusted its student assignment policies to comply with the Supreme Court's decision and this Court's enforcement of it.  Subsequently, Plaintiff Crystal Meredith ("Plaintiff") filed a brief memorandum supported by two affidavits requesting damages of about $125,000, comprised of $78,000 lost earnings, $13,140 in lost "perks" from her employment, about $10,000 for expenses due to business losses and loss of privacy and $22,464 for

---

[1]More recently, Dr. Sheldon Berman has been substituted as a party defendant.

embarrassment and humiliation.  Interposing the doctrine of sovereign immunity, JCBE has objected to the award of damages.

II.

As a threshold matter, the Court must consider the nature of relief that Plaintiff has requested under both her equal protection claim and her state law claims.  In addition to injunctive relief, Plaintiff now seeks damages.  The Court will consider first her federal claims.

The Constitution does not directly provide for damages.[2]  Therefore, to sustain her cause of action under the Fourteenth Amendment, Plaintiff must proceed under one of the statues authorizing damages for constitutional violations.  Here, the enabling statute is the Civil Rights Act of 1871, 42 U.S.C. § 1983.  See *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).  Plaintiff has never expressly asserted a § 1983 claim.  Nevertheless, the only avenue for pursuing a constitutional equal protection claim of any kind in a United States district court is via that enabling statute.  From its inception, this Court has assumed jurisdiction to decipher and decide the equal protection claims.  Under different circumstances, the Court could exercise its discretion to dismiss a § 1983 damage claim where a plaintiff neglects to assert the statute.  The long history of this litigation suggests that to do so here would be improper.  Here, the pleadings are deemed amended by common consent and the Court will proceed with its analysis accordingly.

Plaintiff's supposed state law claims are another matter entirely.  Plaintiff claims

---

[2]While the Supreme Court has authorized damages for violations of constitutional amendments by *federal* officials, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff here has not alleged involvement of the federal government.  The Sixth Circuit has held that constitutional violations by *state* officials for damages are cognizable only under 42 U.S.C. § 1983, the enabling statute that provides exclusive remedy for constitutional violations.  See *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), *vacated and remanded on other grounds*, 488 U.S. 1036 (1989).

3

damages under the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. Ann. § 344, which prohibits racial discrimination in a variety of settings and provides for damages against those violating its provisions.  One purpose of KCRA is to provide the execution within Kentucky of the policies embodied in the Federal Civil Rights Act of 1964.  Ky. Rev. Stat. Ann. § 344.020(1)(a).  However, neither the Federal Civil Rights Act or KCRA explicitly provides a private right of action for discrimination with respect to student school assignments or access to education, and this Court searches in vain for any suit ever brought under KCRA for school student assignments.  The absence of such language probably explains why Plaintiffs never pressed their Chapter 344 claims beyond the original complaint.  Plaintiff directs the Court's attention to *Lamb v. Sallee*, 417 F.Supp. 282 (E.D. Ky. 1976), but this case involves a claim for racial discrimination in housing under federal statutes and the Thirteenth Amendment.  By failing to press those claims, the Court certainly considered them to be abandoned.  Under any of these circumstances, Plaintiff cannot now assert a legal claim for damages under Chapter 344.

III.

The Court must now consider whether it may enter a judgment for damages against JCBE under 42 U.S.C. § 1983.  The breadth of the Eleventh Amendment's protection of state governments and agencies from suit under federal law determines the result.  This is an entirely different question than the extent of the immunity Kentucky state common law extends to its own governmental agencies from suit under state law.  And, the answer is not so straightforward as either party might have suggested.

A.

The Court notes that Plaintiff sued Superintendent Berman in his official capacity only.

4

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' a person sued in his official capacity stands in the shoes of the entity he represents." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)(citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)("Official capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent.")); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)("A suit against an individual is his official capacity is the equivalent of a suit against the governmental entity.").  In this case, because JCBE was named as a co-defendant, it received notice and an opportunity to respond to the lawsuit.  Therefore, the suit against Superintendent Berman in his official capacity "imposes liability on the entity that he represents."  *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  "While an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Thus, JCBE as the government entity that employed Superintendent Berman is the only true defendant in this case.  *See Alkire*, 330 F.3d at 802.

Moreover, because Plaintiff sued Superintendent Berman in his official capacity only, Superintendent Berman cannot claim any personal immunities, such as qualified immunity, to which he might be entitled if Plaintiff had sued him in his individual or personal capacity.  *See id.* (citing *Graham*, 473 U.S. at 167).  Thus, Plaintiff's suit against Superintendent Berman in his official capacity is essentially identical to Plaintiff's suit against JCBE.  As such, the defenses to Plaintiff's claims for damages against JCBE and Superintendent Berman in his official capacity are the same and the conclusions that the Court necessarily reaches the same conclusion with

5

respect to JCBE and Superintendent Berman's official liability for damages.

B.

JCBE argues that Eleventh Amendment to the United States Constitution bars Plaintiff from recovering damages against JCBE or Superintendent Berman in his official capacity.  The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another State, or
> by Citizens or subjects of any foreign State.

The Eleventh Amendment bars a federal lawsuit for damages against a state unless the state waives its immunity.  See, e.g., *Edelman v. Jordan*, 415 U.S. 651, 673 (1977).  The scope of the Eleventh Amendment immunity extends to agencies acting as arms of the state, but not to cities, counties, or other political subdivisions.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  The immunity also applies to actions against state officials sued in their official capacity for money judgements.  *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).  Therefore, this Court must determine whether JCBE is a state agency or "arm of the state" which may invoke the state's Eleventh Amendment immunity.

A federal court makes this determination on the basis of federal law.[3]  *Regents of the*

---

[3] Thus, it is important to emphasize that Kentucky court opinions addressing a state agency's sovereign immunity or governmental immunity under state law are completely irrelevant to the Court's analysis.  As Defendants correctly observe, the Kentucky Supreme Court has recently held that, "[a] local board of education is not a 'government,' but an agency of state government" and therefore entitled to governmental immunity. *Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky. 2001).  A Kentucky court's opinion on this matter is not controlling.  *See Howlett v. Rose*, 496 U.S. 356, 377 (1990)(noting "[t]o the extent that the [state] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot ovverride the dictates of federal law."); *see also Blackburn v. Floyd County Bd. of Educ.*, 749 F. Supp. 159, 161 (E.D. Ky. 1990).  Even Kentucky state courts concede that "state treatment of

*Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997):

> Ultimately, of course, the question of whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore "one of the United States" within the meaning of the Eleventh Amendment, is a question of federal law.  But that federal question can be answered only after considering the provisions of state law that define the agency's character.

The Sixth Circuit, drawing from the Supreme Court's analysis in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 44-51 (1994), applies a multi-factor test to decide whether an entity is an "arm of the state."  These factors include: (1) the State's potential liability for a judgement against the entity, (2) the language by which the state statutes and state courts refer to the entity, the degree of state control and its veto power over the entity's actions; (3) whether the state or local official appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government. *Ernst,* 427 F.3d at 359 (citing *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 44-51 (1994))(internal citations omitted).  The first factor is the foremost factor in the analysis. *Id.* (citing *Regents of Univ. of Cal.*, 519 U.S. at 431).

## C.

As measured by these benchmarks, this Court concludes that JCBE is not a state agency or arm of the state for purposes of the Eleventh Amendment.  Under *Ernst*, the first factor to consider is Kentucky's potential liability for judgment against JCBE.   This is not the first

---

sovereign immunity is not relevant to a determination of whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue." *Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 836 (Ky. 2004)(citing *Howlett*, 496 U.S. 356).

occasion that a federal court has examined local school boards in Kentucky, and specifically the JCBE for purposes of determining Eleventh Amendment immunity.  In *Cunningham v. Grayson*, 541 F.2d 538, 543 (6th Cir. 1976) the Sixth Circuit held "that JCBE is neither the 'state' nor its 'alter ego'" because it had the power to "most importantly, levy school taxes through the county fiscal court." (citing Ky. Rev. Stat. Ann. § 160.460; 160.470; 160.475; 160.476; 160.593).  As the Eastern District of Kentucky has more recently noted, local school boards in Kentucky retain this power today. *Blackburn v. Floyd County Bd. of Educ.*, 749 F.Supp. 159, 162 (E.D. Ky. 1990).

1.

Defendants do not argue that JCBE would be unable to satisfy the judgement from local funds.  Indeed, because the Board exercises the power to levy taxes, it is unlikely that JCBE would actually pay a judgement by state funds, as opposed to money retained and spent locally. *See id.* (rejecting the Floyd County Board of Education's argument that because a substantial portion of the Board's budget was funded by the state,  a judgment against it would actually would be satisfied by state funds).  In fact, Ky. Rev. Stat. Ann. § 160.160 provides that the Board, "may expend funds necessary for liability insurance premiums and for the defense of any civil action brought against an individual board member in his official or individual capacity, or both."  This statutory language and the absence of any evidence to the contrary, leads the Court to conclude that any monetary damages against JCBE would not cause a depletion on the state treasury.  Thus, this "important" factor weighs against sovereign immunity for JCBE.  *See Regents of Univ. of Cal.*, 519 U.S. at 430.

2.

8

The second *Ernst* factor considers the statutory language referencing JCBE and the degree of state control and veto power of the Board's actions. *See* 427 F.3d at 359-60.  JCBE is "a body politic and corporate with perpetual succession [which] may sue and be sued . . ." Ky. Rev. Stat. Ann. § 160.160.  In addition, the Board may contract, purchase, receive, hold and sell property, and issue bonds.  *Id.*  The *Cunningham* court found these factors persuasive in its conclusion that JCBE was not entitled to sovereign immunity.  541 F.2d at 543.  Moreover, the Kentucky legislature mandates that "[e]ach school district shall be under the *management and control* of a board of education."  Ky. Rev. Stat. Ann. § 160.160 (emphasis added).  As the *Blackburn* court noted, "such powers have been relied upon elsewhere to find local boards to be autonomous bodies." 749 F.Supp. at 162 (citing *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 132-33 (5th Cir. 1986).  Section 160.290 further provides that the local boards retain "general control and management of the public schools within its district." *Id.*  The statute also provides the power to establish schools, provide courses, manage funds, appoint the superintendent and fix the compensation of employees.  Ky. Rev. Stat. Ann. § 160.290(1).[4]

While it is true that Kentucky state courts have characterized local school boards as state agencies for purposes of state sovereign immunity, *see, e.g. Yanero*, 65 S.W.3d at 527, the statutory language authorizing local school boards illustrates their high degree of autonomy and independence of state control.

The final two factors are mixed and not particularly influential.

---

[4]This Court agrees with the Eastern District of Kentucky that passage of the Kentucky Education Reform Act (KERA) of 1990 does not alter the Eleventh Amendment analysis.  *See Tolliver v. Harlan County Bd. of Educ.*, 887 F.Supp. 144, 147 (E.D. Ky. 1995)(recognizing the significant role of local authority under KERA).  Although KERA sets out requirements for state-wide testing and educational goals, individual school boards still retain substantial autonomy in the formulation of policies such as student assignment.

3.

The third factor is whether state or local officials appoint the JCBE board members. *Ernst*, 427 F.3d at 359.  Under Kentucky law, JCBE is composed of seven board members who are elected by the district for terms of four years.  Ky. Rev. Stat. Ann. §§ 160.160; 160.210(5). Thus, this factor also weighs against characterizing JCBE as an arm of the state for purposes of the Eleventh Amendment.

The final factor is whether JCBE's functions fall within the traditional purview of state or local government.  *Ernst*, 427 F.3d at 359.  On one hand, the Kentucky Constitution does provide that "[t]he General Assembly shall provide for an efficient system of common schools . . .", as evidenced by the statutory framework cited above.  Ky. Const. § 183.  On the other hand, actual decision making does occur at a local level.

Based on the *Ernst* factors, particularly the strong influence of the first two factors, the Court concludes that the Eleventh Amendment does not bar a § 1983 action for damages against JCBE.  The Court is not alone in reaching the conclusion a Kentucky local school board is not a state agency or arm of the state for purposes of the Eleventh Amendment.  *See, e.g., Adkins v. Bd. of Educ. of Magoffin County, Ky.*, 982 F.2d 952 (6th Cir. 1993); *Ghassomians v. Ashland Indep. Sch. Dist.*, 55 F.Supp. 2d 675 (E.D. Ky. 1998); *Doe v. Knox County Bd. of Educ.*, 918 F.Supp. 181 (E.D. Ky. 1996);  *Tolliver*, 887 F.Supp. 144; *Blackburn*, 749 F.Supp. 159;[5] *see also Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. 274;  *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992 (10th Cir. 1993).

---

[5]The Court recognizes that in an earlier unpublished opinion it has dismissed a § 1983 damages action against JCBE on the basis of a state court decision characterizing it as "an agency of state government." *K.F. v. Jefferson County Sch. Dist.*, 2007 WL 1231562 (W.D. Ky. 2007). The Court's characterization in that instance was not dispositive and, in any event, was based upon considerably less research.

10

IV.

Local governing bodies, like JCBE, are liable under § 1983 only if the action that is alleged to be unconstitutional implements or executes a policy or custom of that body. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978).  There is no dispute that JCBE's student assignment plan was the official and duly enacted policy of JCBE.  In this case, in April 2001, after considering public feedback from opinion surveys and community meetings, the Board adopted the 2001 Student Assignment Plan.  *McFarland v. Jefferson County Public Sch.*, 330 F. Supp. 2d 834, 842 (W.D. Ky. 2004).  It is unquestionable that the Board was acting within the limits of its authority in implementing a student assignment plan, and therefore the student assignment plan is properly characterized as the official policy of JCBE.

Defendants are liable regardless of their reliance on previous judicial determinations that the student assignment plan was constitutional.  *See Garner v. Memphis*, 8 F.3d 358, 362 (6th Cir. 1993).  That an local government entity and its officers were acting in good faith in implementing or executing a particular policy is not a defense to a § 1983 damages action. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980) ("[a] municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.").

> Thus, even where some constitutional development could not have been foreseen by municipal officials, it is fairer to allocate any resulting financial loss to the inevitable costs of government borne by all the taxpayers, than to allow its impact to be felt solely by those whose rights, albeit newly recognized, have been violated.

*Id.*  The Sixth Circuit faced a similar decision in *Garner*.  *Garner* involved a § 1983 action brought by the father of fifteen-year-old fleeing felony suspect who was fatally shot by the

11

Memphis police under circumstances which the Supreme Court ultimately held to have violated the Fourth Amendment. 8 F.3d at 360. After the case was remanded for damages, the district court held that the defendants were not liable because, at the time of their action, they had relied on previous judicial determinations that their fleeing felony policy did not violate the Fourth Amendment. *Id.* at 362. The Sixth Circuit reversed, observing, "[t]his case is itself the case in which the Supreme Court declared the fleeing felon rule, and it is hornbook law that the rule should be applied retroactively in the very case that lays down a rule. *Otherwise parties would have no incentive to argue for such a rule because they would get no benefit from winning the case.*" *Id.* (emphasis added). In this case, although the Supreme Court did not explicitly state that its holding was to be applied retroactively to the parties before the Court, the Court's remanded and took notice that Plaintiff was seeking damages. *Parents Involved in Cmty Sch. v. Seattle Sch. Dist. No. 1*, 127 S.Ct. 2738, 2751 (2007).[6]

Defendants are therefore liable for damages regardless of whether JCBE and its Superintendent were acting in good faith and even if they were in acting in reliance on past court decisions holding the student assignment plain to been constitutional. *Id.*

V.

Plaintiff has submitted a memorandum in support of damages in the amount of $125,000. She requests damages for lost earnings in the amount of $78,000, lost employment "perks" in the amount of $13,140 and $10,000 in business losses and expenses. Finally, damages for embarrassment and humiliation in the amount of $22,464. Each of these requests raises serious

---

[6]As noted by the Sixth Circuit, where a Supreme Court opinion is silent as to its retroactivity, the Court has later interpreted it to apply to the parties before it. *See Garner,* 8 F.3d at 363(citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991)(holding unanimously that a previous opinion's silence on retroactivity indicated that the Court intended to follow the usual practice of applying its decision to the parties before it.).

questions.  Plaintiff is entitled to compensatory damages only to the extent that she can prove

actual injury.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)("*no

compensatory damages could be awarded for violation of that right absent proof of actual

injury*")(citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)).  Any § 1983 claim "is entirely

personal to the direct victim of the alleged constitutional tort." *Tallman v. Elizabethtown Police

Dep't*, 344 F. Supp. 2d 992, 997 (W.D. Ky. 2004)(quoting *Claybrook v. Birchwell,* 199 F.3d 350,

357 (6th Cir. 2000).  This means that the victim's family members may not recover for emotional

distress or "any other consequent collateral injuries allegedly suffered personally." *Claybrook*,

199 F.3d at 357.  Section 1983 provides no guidance for how to evaluate damages.  However, the

Sixth Circuit has noted:

> if section 1983 is deficient in the provisions necessary to furnish suitable
> remedies and punish offenses against law, the common law, as modified and
> changed by the constitution and statutes of the State wherein the court having
> jurisdiction of such civil or criminal cause is held, so far as the same is not
> inconsistent with the Constitution and laws of the United States, shall be
> extended to and govern the said courts in the trial and disposition of the cause.

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006)(quoting 42 U.S.C. § 1988).

Accordingly, the Court turns to the common law of Kentucky to resolve any issues regarding the

calculation of damages.

Plaintiff brought this lawsuit on behalf of her minor son, Joshua.  Therefore, the Court

must determine which of the damages she is seeking may properly be characterized as personal

to her son, and which are collateral.  Applying the appropriate rules, Ms. Meredith is not entitled

to recover for any invasion of privacy, harassment, embarrassment or humiliation that she may

have personally suffered as a result of filing this lawsuit.  These hardships arose from

13

maintaining the lawsuit, and cannot be said to flow directly from Defendants' actions in maintaining an unconstitutional student assignment plan.  Moreover, to the extent that Joshua himself has endured any invasion of privacy, harassment, embarrassment, or humiliation, Plaintiff must prove that such injury was a result of Defendants' student assignment plan, and not an incidental result of maintaining a high profile lawsuit.

Neither Ms. Meredith nor her son appeared to give testimony regarding her request for damages relating to leaving her full-time employment.  Thus, her request fails as a matter of evidence.  Nevertheless, it is inconceivable that damages of the kind requested would be allowed based upon the suggestion that leaving full-time employment was necessary to transport a child to a bus stop.  Here, one would presume, that Meredith could have obtained transportation in the manner as the other ninety thousand JCBE students; by catching a school bus or getting an early morning ride with a parent.

Finally, with respect to the $300 in school parties fees and $1,556.00 in school uniform fees, Plaintiff has utterly failed to explain how these expenses were a result of Defendants' student assignment plan.  These expenses are no different than those which could be incurred by every other parent with a child in the system.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's request for damages fails as a matter of law and evidence and is DENIED.

cc:    Counsel of Record