UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:02CV-620-H

CRYSTAL MEREDITH					PLAINTIFF

V.

JEFFERSON COUNTY BOARD OF EDUCATION, et al.		DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, through counsel, has moved for attorney's fees in the amount of $750,000. Counsel premises his request upon a claim of approximately 560 hours worked at $400 per hour, equaling a base amount of approximately $224,000, plus a bonus of roughly twice that amount based upon the extraordinary circumstances of his work.[1]  Defendant has objected vigorously to the request. The Court has carefully considered all of the written and oral arguments. Now the Court will describe its analysis and conclusions.

I.

The first question is whether Plaintiff is a person who is entitled to receive her attorney's fees. Title 42 U.S.C. § 1988 provides that in an action under § 1983, "the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs." *Id.* The answer is yes.

---

[1] In his initial request, counsel included his expenses within the ledger of his professional time. The expenses contained no backup material nor a separate itemization as is expected in such a motion. The Court requested a revised spreadsheet. Counsel produced a new one, which, as the Court will discuss, answered some questions and raised others.

The Sixth Circuit has a well-established standard for determining a "prevailing party." *See Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001). "To be a 'prevailing party,' a party must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111 (1992).

Surprisingly, Defendant made an extended argument that Plaintiff is somehow not a prevailing party. The Court does not agree. Plaintiff maintained standing to claim declaratory and injunctive relief as well as money damages throughout this litigation. Most important, Plaintiff prevailed on her central premise: that Defendants' student assignment plan violated the equal protection clause. In that respect, Plaintiff prevailed for school age children as well as for many other school children current and future. A plaintiff need not succeed in every aspect of their case to gain status as a "prevailing party." The degree of their success can be a factor that enhances or diminishes a fee request.

Here, Plaintiff's success was quite significant by any measure.[2] On these rather straightforward and obvious grounds, Plaintiff certainly qualifies as a prevailing party under § 1988.

---

[2] Yesterday, the Court issued an opinion which denied Plaintiff's claim for money damages. The Court denied the claim for two reasons: (1) under our cases a parent cannot claim personal damages for violation of the child's rights, and (2) neither the parent nor the student came forward to testify at the hearing. As counsel no doubt understood, without their testimony, damages could not be proven. However, the failure to receive damages does not lessen the importance of counsel's victory. This case was always about the Constitution and never about damages.

II.

Counsel is entitled to a reasonable fee, that is, "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The Court begins by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is known as the "lodestar" calculation. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006). Counsel has the burden of documenting the appropriate hours expended and hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

A.

The Court first calculates the actual number of compensable hours that counsel devoted to the case. This is usually a simple matter of adding together relevant hours and minutes. It is counsel's obligation to accurately record and account for those hours. Unfortunately, this basic requirement has proved more arduous than expected. Here, counsel claimed approximately 560 hours over about five (5) years of litigation. No one suggests that counsel has over-billed. To the contrary, the hours requested are incredibly low considering the actual complexity of this case. Rather, it is a matter of accurately accounting for the hours claimed. Not every activity of counsel is compensable. Defendants are correct to insist that the lodestar be accurate, even where the total requested is reasonable.

The Court began with the approximately 564 hours that Counsel claimed to have spent through November 1, 2007. Plaintiff had not actually tallied the total number of hours devoted to the case nor did he separate and specifically document his expenses. Because such a tally is absolutely necessary in order to justify any fee, the Court has asked his cooperation. The results

produced clarifications as well as confusion. The fees under § 1988 are awarded for legal work and not for public appearances, speeches and media relations not directly related to the litigation of the case. Even though these activities may arise from the case and may even benefit the client in some indirect manner, this is not time which is compensable under a lodestar calculation. *See Halderman v. Pennhurst State School & Hospital*, 49 F.3d 939, 942 (3rd Cir. 1995). The Court has subtracted the approximately 40.8 hours which it determined to be non-compensable public appearances and media relations. The Court also reduced Counsel's estimated travel time to Washington, D.C. from sixteen hours (16) to three (3) hours, which the Court believes represents a more reasonable estimate of the transit time from Louisville to Washington D.C. Finally, the Court notes that counsel has added approximately 11.5 hours through September 19, 2007 which counsel claimed without explanation in his pleadings.

As a result of this effort, the Court concludes that Plaintiff has documented approximately 498.7 hours of legal work, which the Court will round to 500 hours.

B.

Next, the Court must determine the appropriate hourly rate. To determine the reasonable hourly rate the Court should initially assess the "prevailing market rate in the relevant community," in this instance the Western District of Kentucky. *Hensley*, 461 U.S. at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Counsel asks for compensation at $400 per hour. He has the burden of justifying such an amount. *Blum v. Stensen*, 465 U.S. 886, 896 (1984). Counsel has submitted no real evidence suggesting that he is entitled to such a high rate.

Indeed, counsel cannot truthfully say that he actually charges such a rate.[3] The three pro forma affidavits which Plaintiff did submit contain only a generic conclusion and no facts which would support such a high hourly rate.

In the prior case ending in 2000, this Court awarded a fee based upon $200 per hour. Plaintiff has made no argument why the rate approved as reasonable then should differ substantially. The passage of seven years since his last requests does suggest that all rates rise with inflation. The Court will approve a rate of $225, which is a modest increase. But the Court is without a legitimate basis for going higher.

The Court will calculate the initial lodestar based upon the actual compensable hours of 500 multiplied by the reasonable hourly rate of $225, which equals $112,500. The Court also reviewed Counsel's requested expenses and found that they were all compensable, except for the $5,000.00 he spent on media relations. Counsel's compensable expenses are therefore $10,138.02.

### III.

The Court must now determine whether any extraordinary factors justify an adjustment of the lodestar amount. Recently in a state university desegregation case, the Sixth Circuit once again commended *Hensley v. Eckerhart*, 461 U.S. 424, 430, 434 (l983) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (6th Cir. 1974), as establishing possible grounds for an upward or downward adjustment of fees. *Geier v. Sundquist*, 373 F.3d 784, 792 (6th Cir. 2004). Those factors are:

---

[3] Counsel does argue in passing that his actual hourly rate is $250. If this is so, then a request for $400 per hour is without any foundation.

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The Sixth Circuit also reiterated that adjustments are limited to "rare" and "exceptional" circumstances because many of the *Johnson* factors are already subsumed within the calculation of hours reasonably expended on the case. *Geier*, 373 F.3d at 792-93.

Defendants commend *Oliver v. Kalamazoo Bd. of Educ.*, 576 F.2d 714, 715 (6th Cir. 1974), for the proposition that a multiplier or upward adjustment is not authorized in desegregation cases. There, the Sixth Circuit said, in a brief opinion, that Plaintiff had cited no cases justifying an upward adjustment under the Emergency School Aid Act, 20 U.S.C. § 1617.[4] Since then, the Sixth Circuit has either abandoned *Oliver* or reconsidered as not so hard and fast. The current view is that upward adjustments are permissible in certain "rare" and "exceptional" cases. *Geier*, 373 F.3d at 793 (citing *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)). Indeed, the Sixth Circuit has said that it would be error for the district court to not consider an upward adjustment. *Id.* at 793. Having a full knowledge of the case, the Court now considers those factors which may warrant such an adjustment.

The first is the undesirability of the case. The Sixth Circuit has said that "claims of

---

[4] 42 U.S.C. § 1988 contains similar statutory language.

discriminatory treatment in an area . . .where discriminatory treatment is often difficult to prove" can be a factor in exceptional cases. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002). Ours is such a case. Counsel faced adverse precedent and many adverse circumstances. At the outset, his chances of winning at any level, not to mention the United States Supreme Court, were certainly problematic.[5] Counsel was criticized and even vilified. Those with the means and right to do so weighed in vigorously against all his efforts. A less determined man would have given way. This counsel did not and deserves credit for staying with the case despite the uphill legal climb, the adverse public and the personal criticism.

Another factor favoring an upward adjustment is the exceptional nature of counsel's success. Regardless of one's view of the law or educational policy, this case has changed the face of American jurisprudence. It is a rare occasion indeed when one, through perseverance and dogged conviction, pursues such a cause to a successful conclusion. The undeniable truth is that counsel pursued an epic case against considerable odds and vehement opposition to an astonishing success. Together, these circumstances create a truly exceptional right to an upward adjustment.

Contrary to his assertions, however, this case would not appear to have precluded counsel from other employment. At most, counsel recorded about 150 hours in any one year on the case

---

[5]The cases in the area of fee enhancements merit a short explanation. On one hand, in *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), the Supreme Court held that "enhancement for contingency is not permitted under the fee-shifting statutes." *Dague* addressed a contingent-fee agreement, which was not present here. However, *Dague* also applies to cases involving solely injunctive or other equitable relief. *Dague,* 505 U.S. at 564. It would appear, therefore, to bar adjustments for contingency risks, even when the possibility of payment was solely based on the fee-shifting statute, as opposed to an attorney-client contingent fee agreement. However, the Sixth Circuit has not interpreted *Dague's* prohibition on fee enhancements based on contingency risks to preclude application of other *Johnson* factors in appropriate circumstances. And, in fact, the Sixth Circuit continues to routinely consider other *Johnson* factors in statutory fee adjustments. *See, e.g. Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005); *Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004); *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002).

that lasted five years. This would amount to no more than ten percent of his professional time in a given year. During the approximately sixty (60) months this case has been pending, in only nine (9) months did counsel devote more than twenty (20) hours to his legal work on this case. Only twice did his time exceed fifty (50) hours in a given month. Indeed, the astonishing fact of the request is that counsel devoted so little time to the case.

Finally, where counsel makes a request of (3) times his own lodestar determination, it cannot help but place at issue the extent to which his skill, experience, reputation and performance actually contributed to that success. In truth, counsel sustained this case more upon a conviction than skill. Such a conviction had little need for experience, cogent analysis, or research, or even evidence at trial. In the end, that conviction prevailed before the Supreme Court.

In sum, the Court's discussion shows that this case is an exceptional one in several ways. The Sixth Circuit has cautioned that a multiplier of 1.75 "is near the upper end of what we consider reasonable." *Barnes v. City of Cincinnati,* 401 F.3d 729, 747, n.4 (6th Cir. 2005). Though some may doubt his skill, none can doubt his resolve. For all of the reasons discussed, counsel is entitled to the maximum reasonable enhancement.

IV.

The parties have argued many points which are simply not relevant for fairly obvious reasons. Nevertheless, in the interest of public understanding, the Court will discuss some of them.

The amount which the JCPS has paid its own attorneys to defend this case is completely irrelevant in our circumstances to determine a reasonable fee for Plaintiff's counsel. First, that

Wyatt, Tarrant and Combs charged between only $95 and $150 for partner work does not limit Plaintiff's counsel fee. JCPS engaged the Wyatt firm at a below market rate. That agreement is simply not relevant to what rate is otherwise reasonable in the community. The total amount paid to the Wyatt firm or whether insurance covered the expense is equally irrelevant. The comparison with the Wyatt firm confirms only that Plaintiff's counsel overall expended fewer than expected hours on the case and certainly a total amount which is reasonable. Similarly, the amounts which the Seattle attorneys have requested or the amounts which Ted Olson might have charged have no relevance here. The matter at issue is Plaintiff's hours worked, his reasonable rate and his success, not that of someone else.

   The Court will enter an order consistent with this Memorandum Opinion. That order concludes all pending and anticipated motions and, therefore, constitutes a final order closing this case.

cc:  Counsel of Record